IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| BYTEMARK, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | Civil Action No. 6:22-cv-00304-ADA |
| | § | |
| MASABI LTD., | § | JURY TRIAL DEMANDED |
| | § | |
| Defendant. | § | |

**FIRST AMENDED COMPLAINT**

Plaintiff Bytemark, Inc. ("Bytemark" or "Plaintiff"), files this Complaint against Defendant Masabi Ltd. ("Masabi" or "Defendant") and as claim for relief states as follows:

**PRELIMINARY STATEMENT**

1. This is an action for patent infringement arising under the patent laws of the United States, United States Code, Title 35, §§ 1 *et seq*.

**PARTIES**

2. Bytemark is a Delaware corporation organized and existing under the laws of the State of Delaware with offices at One Pennsylvania Plaza, Floor 11, Suite 1100, New York, NY 10119 and One American Center, 600 Congress Avenue, Austin, TX 78701.

3. Bytemark is generally in the business of providing a secure mobile ticketing platform for transit, tourism, and events through smartphone apps, point-of-sale plugins, and open APIs. Bytemark is a market leader in providing mobile ticketing technologies to the transit industry and delivers a comprehensive platform that improves the ticket and payment experience for consumers and merchants.

1

4. Masabi is a United Kingdom corporation with its principal place of business at 37 Bevenden Street, London, United Kingdom N1 6BH.

5. Masabi is in the business of offering for sale and selling mobile ticketing applications.

6. Masabi directed, implemented, and benefitted from the unlawful activities pleaded within. Masabi maintains complete control over its subsidiary entities, including Masabi LLC, and they are, in form and substance, one and the same. The acts and daily operations of Masabi's subsidiary entities were, in form and substance, those of Masabi and were directed and fully controlled by Masabi in London. Masabi's subsidiary entities abided by Masabi's policies and communicated to the public that Masabi and its subsidiary entities were one and the same. These subsidiary entities consented to this relationship, exercised a low amount of discretion, owed a fiduciary duty to Masabi, and possessed the power to alter the legal relations between Masabi and third parties (e.g., to enter into contracts). Masabi carried the gain or risk, not its subsidiary entities. The employees of Masabi's subsidiary entities, including Masabi LLC, were scattered and decentralized, reporting to the London office and implementing Masabi's directives. Moreover, there was an overlap in ownership, officers, directors, and personnel, with, e.g., employees of Masabi working concurrently for its subsidiary entities. It is believed that Masabi and its subsidiary entities shared common office space, address and/or phone numbers. It is also believed that Masabi and its subsidiary entities' funds, profits, and property were intermingled; that its subsidiary entities were not treated as independent profit centers; that there was inadequate capitalization; that there was a disregard for corporate formalities; and that its subsidiary entities' debts were guaranteed and paid by Masabi.

**BACKGROUND**

7. Bytemark is the owner of all rights, title, and interest in and to United States Patent Nos. 10,360,567 ("the '567 patent"), attached hereto as Exhibit A, and 10,346,764 ("the '764 patent"), attached hereto as Exhibit B (collectively the "Patents-in-Suit"). The '567 patent issued on July 9, 2019. The '764 patent issued on July 23, 2019.

8. Bytemark offers for sale visual validation mobile ticketing applications and systems disclosed and claimed by the Patents-in-Suit, including but not limited to the V3 Ticketing Technology.

9. Bytemark has secured contracts relating to its V3 Ticketing Technology within the mass transit industry, including with New York Waterway, the largest private ferry operator in the United States; Capital Metro, in Austin, Texas; and Metropolitan Transit Authority of Harris County, in Houston, Texas, among others.

10. Defendant is offering for sale and selling its visual validation mobile ticketing applications and systems, including the exemplary Masabi-mticket MBTA application and system and Masabi-NICE gomobile mobile applications and systems, that infringe at least claim 1 of the '567 patent literally and/or under the doctrine of equivalents and at least claim 1 of the '764 patent literally and/or under the doctrine of equivalents.

11. Masabi was directly put on notice of its infringement of the Patents-in-Suit. On July 2, 2019, after an investigation of the claims of Bytemark's allowed patent applications (14/286622 and 14/823157) that resulted in the Patents-in-Suit and Defendant's Masabi-mticket MBTA and Masabi-NICE gomobile applications and systems, Bytemark notified Defendant that its exemplary Masabi-mticket MBTA application and system practices Bytemark's allowed patent claims applications and provided Masabi with copies of the USPTO Notices of Allowances.

12. On February 17, 2020, after the Patents-in-Suit issued, Bytemark again notified Defendant that its Masabi-mticket MBTA practices at least claim 1 of the '567 patent and claim 1 of the '764 patent. Despite this notice, Defendant has continued to use and offer for sale applications and systems that infringe Bytemark's patent claims.

13. The Patents-in-Suit disclose and claim Bytemark's V3 Ticketing Technology.

14. Bytemark offers for sale the visual validation mobile ticketing application and system disclosed and claimed by the Patents-in-Suit, including but not limited to the V3 Ticketing Technology.

15. Masabi is offering for sale and selling its visual validation mobile ticketing applications and systems, including the exemplary products/systems the Masabi-NICE gomobile and Masabi-mticket MBTA, that infringe at least claim 1 of the '567 Patent literally and/or under the doctrine of equivalents and at least claim 1 of the '764 Patent literally and/or under the doctrine of equivalents.

16. Bytemark and Masabi are competitors in the niche mobile ticketing market. Competitors in this market frequently bid against each other to provide mobile ticketing services to municipalities across the nation. Bytemark and Masabi directly compete for contracts with mass transit authorities.

17. Masabi has previously been sued by Bytemark for patent infringement in the Eastern District of Texas (*Bytemark, Inc. v. Masabi Ltd.*, 2:16-cv-00543-JRG-RSP).

18. Masabi has sold its infringing visual validation applications and systems to the Massachusetts Bay Transportation Authority ("MBTA") in Boston, Massachusetts; The Woodlands Express Park and Ride Bus ("Woodlands") in The Woodlands, Texas; VIA

Metropolitan Transit ("VIA") in San Antonio, Texas; and Nassau Inter-County Express ("NICE") in Nassau County, New York.

19. Over the past few years, Masabi has offered for sale its visual validation mobile ticketing applications and systems in Texas to Capital Metropolitan Transit Authority ("CMTA") in Austin, Texas; Dallas Area Rapid Transit ("DART") in Dallas, Texas; and Metro Transit Authority of Harris County ("METRO") in Houston, Texas.

20. Masabi has and continues to market its infringing Masabi-NICE gomobile and Masabi-mticket MBTA applications and systems through press releases, case studies, and demonstrative online videos.

## JURISDICTION

21. This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a) because this action arises under the Patent Laws of the United States, 35 U.S.C. §§ 1 *et seq.*

22. Venue in this judicial district is proper under Title 28, United States Code, § 1391(c)(3), because Defendant is not a resident of the United States.

23. This Court has personal jurisdiction over Defendant because Defendant has done business and continues to do business in Texas, marketed and promoted its products within Texas, and has committed acts of patent infringement in Texas, including but not limited to selling and offering to sell its infringing mobile applications and systems to mass transit authorities in Texas. These mass transit authorities include, but are not limited to, Woodlands in The Woodlands, Texas, and VIA in San Antonio, Texas.

24. In the alternative, this Court has personal jurisdiction over Defendant under Federal Rule of Civil Procedure 4(k) even if Defendant is not subject to personal jurisdiction in any state's courts of general jurisdiction. These causes of action arise under federal law because the claims

fall under 35 U.S.C. § 271. The exercise of jurisdiction over Defendant is consistent with due process because Defendant has sufficient minimum contacts with the United States such that jurisdiction does not offend traditional notions of fair play and substantial justice. Defendant has purposefully directed its activities at residents of the United States through the sale of its infringing mobile applications and systems in the United States through its U.S. customers, including but not limited to, MBTA, Woodlands, VIA, and NICE, among others. These claims arise out of and relate to the sale of Defendant's infringing applications and systems in the United States, and the assertion of jurisdiction is reasonable and fair. Finally, Defendant knowingly induced mass transit authorities and their customers to use the accused applications and systems in an infringing manner in the United States.

## COUNT ONE
## INFRINGEMENT OF U.S. PATENT NO. 10,360,567

25. Plaintiff incorporates by reference the allegations set forth in paragraphs 1-24 herein.

26. Plaintiff alleges that Defendant infringed, and continues to infringe, at least claim 1 of the '567 patent by offering for sale, using, and/or selling, distributing, promoting or providing for use by others mobile ticketing systems, including the Masabi-NICE gomobile and Masabi-mticket MBTA applications and systems, that include a mobile ticketing system for detecting fraudulent activity of tickets using data integrity and all claim elements recited in at least claim 1. *See* Exhibit A.

27. Masabi directed, implemented, and benefitted from its infringement of the Patents-in-Suit and, at all relevant times, maintained complete control over the acts and daily operations of its subsidiary entities, including Masabi LLC. Masabi, Masabi LLC, and Masabi's other subsidiary entities are, in form and substances, one and the same.

28. The exemplary Masabi-NICE gomobile and Masabi-mticket MBTA applications and systems meet the claim element "a mobile device in communication with a server." The Masabi-NICE gomobile and Masabi-mticket MBTA applications and systems include a user mobile device in communication with one or more Masabi servers.

29. The exemplary Masabi-NICE gomobile and Masabi-mticket MBTA applications and systems meet the claim element "a server adapted to receive authentication data for a user account from the mobile device via a data network, and transmit data in the form of a ticket payload that contains code to the mobile device embodying a pass, wherein the pass includes a validation visual object that a ticket taker can rely on as verification of the pass without using a scanning device and wherein the validation visual object is not accessible until a time selected to be close to the point in time where the ticket has to be presented." The Masabi servers are adapted to receive authentication data for a user account from the mobile device embodying a pass. The pass of the exemplary accused applications/systems includes a validation visual object that a ticket taker (e.g., train or bus operators) can rely on as verification of the pass without using a scanning device. The validation visual object of the exemplary accused applications/systems is not accessible until a time selected to be close to the point in time where the ticket has to be presented.

30. The exemplary Masabi-NICE gomobile and Masabi-mticket MBTA applications and systems meet the claim element "wherein the server is further configured to: receive the pass with the data from the mobile device and determine if there is any mismatch in the received data of the pass by comparing the received data with the data transmitted." The Masabi servers are configured to receive the pass with the data from the mobile device to determine if there is any mismatch in the received data of the pass by comparing the received data with the data transmitted.

31. The exemplary Masabi-NICE gomobile and Masabi-mticket MBTA applications and systems meet the claim element "block the user account in an event of the received data is mismatched with the transmitted data and detected as a fraudulent activity." The exemplary accused applications/systems are configured to block a user account in the event that the received data is mismatched with the transmitted data and detected as a fraudulent activity.

32. The exemplary Masabi-NICE gomobile and Masabi-mticket MBTA applications and systems meet the claim element "determine the occurrence of the fraudulent activity associated with the user account in connection with the mobile ticketing system and store in a data record associated with the user account a data value indicating the fraudulent activity and in dependence on the data value indicating fraudulent activity, the code in the ticket payload makes the pass, including the validation visual object, no longer available on the device." The Masabi servers are configured to determine the occurrence of the fraudulent activity associated with a user account in connection with the mobile ticketing system and store in a data record associated with the user account a data value indicating the fraudulent activity and in dependence on the data value indicating fraudulent activity, the code in the ticket payload makes the pass, including the validation visual object, no longer available on the device.

33. Pursuant to 35 U.S.C. § 271(a), Defendant has infringed, and is continuing to infringe (literally and/or under the doctrine of equivalents), at least claim 1 of the '567 patent by offering for sale, using, and/or selling, distributing, promoting or providing for use by others the infringing visual validation mobile ticketing applications, including the exemplary products/systems the Masabi-NICE gomobile and Masabi-mticket MBTA mobile applications throughout the U.S.

34. In violation of 35 U.S.C. § 271(b), Defendant has infringed, and is continuing to infringe (literally and/or under the doctrine of equivalents), at least claim 1 of the '567 patent indirectly by inducing the infringement of the '567 patent claims by third parties including but not limited NICE and MBTA and their customers by encouraging these customers and others to purchase and use the infringing systems and applications including the Masabi-NICE gomobile and Masabi-mticket MBTA mobile applications.

35. On July 2, 2019, after an investigation of the claims of the allowed patent applications (14/286622 and 14/823157) that resulted in the Patents-in-Suit and Defendant's Masabi-mticket MBTA and Masabi-NICE gomobile applications and systems, Bytemark notified Defendant that its exemplary Masabi-mticket MBTA application and system infringes the claims of the allowed application that resulted in the '567 patent and provided Masabi with a copy of the related USPTO Notice of Allowance.

36. On February 17, 2020 Bytemark again notified Defendant that its Masabi-mticket MBTA practices at least claim 1 of the '567 patent.

37. Despite actual notice of infringement, Defendant continues to perform affirmative acts that constitute infringement including offering for sale, selling, distributing, promoting, or providing support and back-end management and service for its infringing applications and systems with the knowledge that its conduct will induce its customers to infringe the '567 patent's asserted claims.

38. In violation of 35 U.S.C. § 271(c), Defendant infringed and is continuing to infringe (literally and/or under the doctrine of equivalents) at least claim 1 of the '567 patent indirectly by contributing to the infringement of the '567 patent's claims by, including but not limited to, NICE and MBTA and their customers.

39. Defendant has contributed and continues to contribute to the infringement of at least claim 1 of the '567 patent because it knew that the applications and systems it offers for sale and sells, including but not limited to the Masabi-NICE gomobile and Masabi-mticket MBTA mobile applications, are infringing and are not suitable for substantial non-infringing use.

40. As a result of Defendant's infringement of the '567 patent's asserted claims, Plaintiff has suffered monetary losses for which Plaintiff is entitled to an award of damages that is adequate to compensate Plaintiff for the infringement under 35 U.S.C. § 284, but in no event less than a reasonable royalty.

41. Defendant's infringement of the '567 patent has been deliberate, willful, and with full knowledge of the '567 patent and its infringement of the asserted claims of the '567 patent.

42. Plaintiff has suffered damages in an amount to be determined at trial by reason of Defendant's willful infringement of the '567 patent, and will suffer additional damages and be irreparably injured unless the Court enjoins Defendant from continuing such infringement.

## COUNT TWO
## INFRINGEMENT OF U.S. PATENT NO. 10,346,764

43. Plaintiff incorporates by reference the allegations set forth in paragraphs 1-42 herein.

44. Plaintiff alleges that Defendant infringed, and continues to infringe, at least claim 1 of the '764 patent by offering for sale, using, and/or selling, distributing, promoting or providing for use by others mobile ticketing systems, including the Masabi-NICE gomobile and Masabi-mticket MBTA mobile applications, that include a method performed by a computer system for displaying visual validation of the possession of a previously purchased electronic ticket for utilization of a service monitored by a ticket taker and all claim elements recited in at least claim 1. *See* Exhibit B.

45. Masabi directed, implemented, and benefitted from its infringement of the Patents-in-Suit and, at all relevant times, maintained complete control over the acts and daily operations of its subsidiary entities, including Masabi LLC. Masabi, Masabi LLC, and Masabi's other subsidiary entities are, in form and substances, one and the same.

46. The exemplary Masabi-NICE gomobile and Masabi-mticket MBTA applications and systems meet the claim element "transmitting a token associated with a previously purchased electronic ticket to a remote display device, wherein the token is a unique identifier and a copy of the unique identifier is stored on a central computer system." The Masabi-NICE gomobile and Masabi-mticket MBTA applications and systems transmit a token associated with an electronic ticket previously purchased by a user to a remote display device, the token is a unique identifier, and a copy of the unique identifier is stored on a central computer system controlled and operated by Masabi.

47. The exemplary Masabi-NICE gomobile and Masabi-mticket MBTA applications and systems meet the claim element "validating the token by matching the token transmitted to the remote display device to the copy of the unique identifier stored on the central computing system to provide a ticket payload to the remote display device." The Masabi-NICE gomobile and Masabi-mticket MBTA applications and systems validate the token by matching the token transmitted to the remote display device to the copy of the unique identifier stored on the central computing system to provide a ticket payload to the user's remote display device.

48. The exemplary Masabi-NICE gomobile and Masabi-mticket MBTA applications and systems meet the claim element "transmitting to the remote display device a validation display object associated with the ticket payload, the validation display object being configured to be readily recognizable visually by the ticket taker, in order to enable the remote display device to

display the validation display object so that upon visual recognition by the ticket taker, the user of the remote display device is permitted to utilize the service monitored by the ticket taker." The Masabi-NICE gomobile and Masabi-mticket MBTA applications and systems transmit to a user's remote display device (e.g., phone) a validation display object associated with the ticket payload. The validation display object is configured to be readily recognizable visually by the ticket taker in order to enable the remote display device to display the validation display object so that upon visual recognition by the ticket taker the user of the device is permitted to utilize the service (e.g., transit system) monitored by the ticket taker.

49. The exemplary Masabi-NICE gomobile and Masabi-mticket MBTA applications and systems meet the claim element "wherein the ticket payload contains code that destroys the validating visual object in a predetermined period of time after initial display or upon some pre-determined input event." The ticket payload of the Masabi-NICE gomobile and Masabi-mticket MBTA applications and systems destroys the validating visual object in a predetermined period of time after initial display or upon some predetermined event.

50. Pursuant to 35 U.S.C. § 271(a), Defendant has infringed, and is continuing to infringe (literally and/or under the doctrine of equivalents), at least claim 1 of the '764 patent by offering for sale, using, and/or selling, distributing, promoting or providing for use by others the infringing visual validation mobile ticketing applications and systems including the exemplary Masabi-NICE gomobile and Masabi-mticket MBTA mobile applications throughout the U.S.

51. In violation of 35 U.S.C. § 271(b), Defendant has infringed, and is continuing to infringe (literally and/or under the doctrine of equivalents), at least claim 1 of the '764 patent indirectly by inducing the infringement of the '764 patent's claims by third parties including but not limited to NICE and MBTA and their customers by encouraging these customers and others to

purchase and use the infringing systems and applications, including the exemplary Masabi-NICE gomobile and Masabi-mticket MBTA mobile applications.

52. On July 2, 2019, after an investigation of the claims of the allowed patent applications (14/286622 and 14/823157) that resulted in the Patents-in-Suit and Defendant's Masabi-mticket MBTA and Masabi-NICE gomobile applications and systems, Bytemark notified Defendant that its exemplary Masabi-mticket MBTA application and system infringes the claims of the allowed application that resulted in the '764 patent and provided Masabi with a copy of the related USPTO Notice of Allowance.

53. On February 17, 2020, after the Patents-in-Suit issued, Bytemark again notified Defendant that its Masabi-mticket MBTA infringes at least claim 1 of the '764 patent.

54. Despite actual notice of infringement, Defendant continues to perform affirmative acts that constitute infringement, including offering for sale, selling, distributing, promoting, and/or providing support and back-end management and service for its infringing applications with the knowledge or willful blindness that its conduct will induce its customers to infringe the '764 patent's asserted claims.

55. In violation of 35 U.S.C. § 271(c), Defendant has infringed and is continuing to infringe (literally and/or under the doctrine of equivalents) at least claim 1 of the '764 patent indirectly by contributing to the infringement of the '764 patent's asserted claims by, including but not limited to, NICE and MBTA and their customers.

56. Defendant has contributed and continues to contribute to the infringement of at least claim 1 of the '764 patent because it knew that the applications and systems it offers for sale and sells, including but not limited to the Masabi-NICE gomobile and Masabi-mticket MBTA mobile applications, are infringing and are not suitable for substantial non-infringing use.

57. As a result of Defendant's infringement of the '764 patent's asserted claims, Plaintiff has suffered monetary losses for which Plaintiff is entitled to an award of damages that are adequate to compensate Plaintiff for the infringement under 35 U.S.C. § 284, but in no event less than a reasonable royalty.

58. Defendant's infringement of the '764 patent has been deliberate, willful, and with full knowledge of the '764 patent.

59. Plaintiff has suffered damages in an amount to be determined at trial by reason of Defendant's willful infringement of the '764 patent, and will suffer additional damages and will be irreparably injured unless the Court enjoins Defendant from continuing such infringement.

## **PRAYER FOR RELIEF**

Wherefore, Plaintiff prays for relief, as follows:

A. That Plaintiff is the owner of all right, title, and interest in and to United States Patent No. 10,360,567, together with all rights of recovery under such patent for past and future infringement thereof;

B. That United States Patent No. 10,360,567 is valid and enforceable in law and that Defendant has infringed said patent;

C. That Plaintiff is the owner of all right, title, and interest in and to United States Patent No. 10,346,764, together with all rights of recovery under such patent for past and future infringement thereof;

D. That United States Patent No. 10,346,764 is valid and enforceable in law and that Defendant has infringed said patent;

E. Awarding to Plaintiff its damages caused by Defendant's infringement of United States Patent Nos. 10,360,567 and 10,346,764, including an assessment of pre-judgment and post-

judgment interest and costs, and an award of supplemental damages for any continuing post-verdict infringement up until entry of the final judgment with an accounting, as needed;

      F.      That Defendant's infringement has been willful and said damages be trebled pursuant to 35 U.S.C. § 284;

      G.      Entering a preliminary and permanent injunction against Defendant, its officers, employees, attorneys, all parent and subsidiary corporations and affiliates, their assigns and successors in interest, and those persons in active concert or participation with any of them who receive notice of the injunction, enjoining them from continuing acts of infringement of the Patents-in-Suit, including without limitation, from continuing to make, use, sell and/or offer for sale;

      H.      That this is an exceptional case and awarding to Plaintiff its costs, expenses, and reasonable attorney fees pursuant to 35 U.S.C. § 285; and

      I.      Awarding to Plaintiff such other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

In accordance with Fed. R. Civ. P. 38(b), Plaintiff hereby demands a trial by jury for all issues triable by jury.

Dated: May 20, 2022                Respectfully submitted,

                                            */s Andy Tindel*

                                            Andy Tindel
                                            Texas Bar No. 20054500
                                            MANN | TINDEL | THOMPSON
                                            112 E. Line Street, Suite 304
                                            Tyler, Texas 75702
                                            Telephone: (903) 596-0900
                                            Facsimile: (903) 596-0909
                                            atindel@andytindel.com

        Dariush Keyhani (*pro hac vice to be filed)*
        Lead Attorney
        District of Columbia Bar No. 1031500
        Frances H. Stephenson (*pro hac vice to be filed*)
        New York registration No. 5206495
        Keyhani LLC
        1050 30th Street NW
        Washington, DC 20007
        T. 202.748.8950
        F. 202.318.8958
        dkeyhani@keyhanillc.com
        fstephenson@keyhanillc.com

        **ATTORNEYS FOR PLAINTIFF**