# EXHIBIT C

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | | |
|---|---|---|
| BYTEMARK, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | Civil Action No. 6:22-cv-00304-ADA |
| | § | |
| MASABI LTD., | § | JURY TRIAL DEMANDED |
| | § | |
| Defendant | § | |

**DEFENDANT MASABI'S INVALIDITY CONTENTIONS CONCERNING
U.S. PATENT NOS. 10,360,567 and 10,346,764**

Pursuant to the Standing Order Governing Patent Proceedings 4.4 and the Court's Scheduling Order (Dkt.#40), Defendant Masabi Ltd. ("Defendant") hereby serves these Invalidity Contentions concerning United States Patent Nos. 10,360,567 ("the '567 Patent), and 10,346,764 ("the '764 Patent") (collectively the "Patents-in-Suit") and accompanying document production on Plaintiff Bytemark, Inc. ("Bytemark"). These Invalidity Contentions, including the charts attached hereto as exhibits or Charts 1-2, specifically identify the prior art known to Defendant that anticipates and/or renders obvious the patent claims at issue – specifically claims 1-16 of the '567 Patent and claims 3-8, 11-14 and 25 the '764 Patent (collectively, the "Asserted Claims") – under 35 U.S.C. §§ 102 and/or 103.[1]

These Invalidity Contentions also point out, as non-limiting examples, where in the prior art the claim elements are found, as well as exemplary rationales for one of ordinary skill combining the prior art. After describing the invalidity of the Asserted Claims in view of the prior art under 35 U.S.C. §§ 102 and/or 103, these Invalidity Contentions disclose various grounds of invalidity under 35

---

[1] Claims 1, 2, 9-10, 15-24 and 26-28 of the '764 Patent were held invalid in the August 17, 2023 IPR2022-00621 Judgement and Order.

1

U.S.C. § 112(1) and (2) due to indefiniteness, lack of enablement, and/or lack of written description and under 35 U.S.C. § 101 for lack of patentable subject matter.

## I. INTRODUCTION

On January 11, 2024, Plaintiff served its Infringement Contentions on Defendant, identifying claims 1-16 of the '567 Patent and claims 3-8, 11-14 and 25 of the '764 Patent as being infringed. Plaintiff's Infringement Contentions do not provide adequate information for Defendant to use in preparing these Invalidity Contentions. Additionally, Plaintiff's Infringement Contentions are vague and conclusory concerning how the claim limitations allegedly read on the accused products or activities. Moreover, Plaintiff's Infringement Contentions fail to state any comprehensible theory of infringement under the doctrine of equivalence, instead reciting statements that lack specificity and fail to explain any theory of equivalence. Further, Plaintiff's doctrine of equivalence theory is misplaced as it is claiming equivalency on claims terms that were amended during prosecution, when the law precludes equivalency under such circumstances. Nor do Plaintiff's Infringement Contentions state any comprehensible theory of the supposed contributing to and/or inducing the alleged infringement. As a result, Defendant is unable to discern Plaintiff's position regarding construction of claim limitations. In addition, Defendant may disagree with Plaintiff's interpretation of the meaning of terms and phrases in the Asserted Claims.

Defendant submits these Contentions without waiving any arguments about the sufficiency or substance of Plaintiff's Infringement Contentions, and without waiving any challenges to Plaintiff's apparent claim constructions. Based in whole or in part on the claim interpretations that Plaintiff appears to be asserting, and its alleged application of those interpretations to the accused instrumentalities, each cited prior art reference listed below anticipates and/or renders obvious the asserted claims of the '567 and '764 patents, as described below and in the associated claim charts,

attached hereto and incorporated by reference as if fully set forth herein.

Identifying these items of prior art and other defenses in connection with these Contentions does not serve as an admission that the accused products are covered by or infringe any of the asserted claims (or any other claims of the '567 or '764 patents), particularly when the asserted claims are properly construed. Further, Defendant's Contentions should not be construed as any admission regarding the proper construction of any asserted claim, should not be deemed to represent or limit the claim constructions that Defendant will advance in this action, and should not be deemed to relate to the non-infringement positions Defendant may advance in this action. Defendant's Contentions reflect Defendant's current knowledge, thinking, and contentions as of this early date in this action. Defendant's Contentions are based in whole or in part on their present understanding of the asserted claims and Plaintiff's apparent position as to the scope of the asserted claims as applied in its disclosures. Accordingly, Defendant's Contentions (including the attached invalidity claim charts) reflect, to the extent possible, Plaintiff's expected alternative and potentially inconsistent positions as to claim construction and scope.

Defendant reserves the right, to the extent permitted by the Court and the applicable statutes and rules, to modify and supplement, without prejudice, these Contentions. In addition, Defendant reserves the right, to the extent permitted by the Court and the applicable statutes and rules, to raise additional prior art and invalidity defenses not included in these Contentions based on additional discovery or other issues raised by Plaintiff in this action or any related action.

Defendant further reserves the right, to the extent permitted by the Court and the applicable statutes and rules, to amend these Contentions should, for example, Plaintiff provide any information that it failed to provide in its Initial Disclosures and/or under OGP for Patents 4.4.

Further, because fact discovery has not yet begun, Defendant reserves the right, to the extent

permitted by the Court and the applicable statutes and rules, to revise, amend, and/or supplement the information provided herein, including identifying and relying on additional prior art references should Defendant's further search and analysis yield additional information or references, consistent with the Local Patent Rules and the Federal Rules of Civil Procedure.

Defendant expressly reserves the right, to the extent permitted by the Court and the applicable statutes and rules, to rely on witness testimony about the prior art references identified below to supplement these Contentions, where appropriate. Defendant also reserves the right, to the  extent permitted by the Court and the applicable statutes and rules, to revise their ultimate Contentions concerning the invalidity of the asserted claims, which may change depending upon the Court's construction of the asserted claims, any findings as to the priority date of the asserted claims, and/or positions that Plaintiff or its fact or expert witness(es) may take concerning claim construction, infringement, and/or invalidity issues.

To the extent that these Invalidity Contentions rely on or otherwise embody particular constructions of terms or phrases in the Asserted Claims, Defendant is not proposing any such constructions as proper constructions of those terms or phrases. The Court has established separate deadlines for Defendant's proposed constructions, and Defendant will disclose their constructions according to those deadlines. For purposes of these Invalidity Contentions, Defendant may adopt alternative, and even inconsistent, claim construction positions. In particular, certain of these Invalidity Contentions, including the charts attached hereto as Charts 1-2, may be based on Plaintiff's apparent constructions as reflected in its Infringement Contentions. Defendant, however, does not admit that any constructions used within these Invalidity Contentions are proper, and Defendant reserves the right to contest any such constructions. Moreover, nothing herein admits in any way that any of Defendant's accused products or services, or any of Defendant's other products or services, infringes any of the

Asserted Claims.

The accompanying invalidity claim charts list specific examples of where prior art references disclose, either expressly or inherently, each limitation of the asserted claims and/or examples of disclosures in view of which a person of ordinary skill in the art at the time each of the alleged inventions was made, would have considered each limitation, and therefore the claim as a whole, anticipated or obvious. The references, however, may contain additional support upon which Defendant may rely. The citations included in each chart are illustrative, not exhaustive. For any given quotation or excerpt, for example, Defendant expressly reserves the right to introduce other text and images (including but not limited to surrounding, related, or explanatory text, images, or un-cited portions of the prior art references) from the same or other prior art references that may help to provide context to the quotation or excerpt. Defendant may also rely on other documents and information, including cited references, prosecution histories for related patents/applications, including non-U.S. patents/applications and witness testimony to explain, amplify, illustrate, demonstrate, and provide context or aid in understanding the cited portions of the references.

Defendant also reserves the right to supplement or otherwise amend these Invalidity Contentions in response to any proposed claim constructions or alleged supporting evidence offered by Plaintiff, any report from any expert witness for Plaintiff regarding claim construction issues, and any claim construction briefing filed by Plaintiff. Moreover, Defendant reserves the right to supplement or otherwise amend these Invalidity Contentions after the Court's claim construction ruling.

Throughout the attached Charts, Defendant provides citations of where references disclose subject matter recited in preambles, without regard to whether the preambles are limitations of the claims. Defendant reserves the right to argue that the preambles are or are not limitations.

Defendant's good faith effort to identify the particular portions of prior art references that

correspond to all elements of the Asserted Claims is not an indication that any element is definite or is adequately described or enabled in the '567 or '764 Patents under 35 U.S.C. § 112, or is patentable subject matter under 35 U.S.C. § 101, especially in light of the broad and vague manner in which the claims are being asserted by Bytemark.

Defendant reserves all rights to supplement or amend these Invalidity Contentions under OGP 4.4 if and when further information becomes available through discovery. Defendant further reserves the right to withdraw prior art from and/or add additional prior art to this disclosure as appropriate.

Finally, to the extent Bytemark successfully seeks leave to amend its Infringement Contentions or is otherwise permitted to allege infringement on any basis not set out in its Infringement Contentions, for example, to assert different claims, accuse different products, introduce different theories of infringement, rely on the doctrine of equivalence, or rely on different evidence, Defendant reserves their right to amend these Invalidity Contentions and/or present responsive evidence and arguments. Moreover, the ambiguity and lack of specificity in Bytemark's Infringement Contentions have prevented Defendant from determining how Bytemark is interpreting or asserting claim elements of the '567 and '764 Patents. Accordingly, Defendant reserves the right to amend or supplement these initial Invalidity Contentions and the attached Charts if and when Bytemark points to or articulates which elements of the accused products, if any, allegedly meet each and every claim limitation of the '567 or '764 Patents.

## II.   IDENTIFICATION OF PRIOR ART PURSUANT TO STANDING ORDER (OGP) 4.4

Pursuant to Standing Order 4.4 for Patent proceedings, and subject to Defendant's reservation of rights, each asserted claim of the '567 and '764 patents are anticipated and/or rendered obvious by the following prior art.  The following patents and publications, produced herewith, are prior art under at least 35 U.S.C. §§ 102(a), (b), (e), (g), and/or 35 U.S.C. § 103:

| Reference | '567 Chart 1 | '764 Chart 2 | Basis |
|---|---|---|---|
| WO 2009/141614 to Terrell | X | X | Obviousness |
| JP2001266178A to Arimori | X | X | Obviousness |
| US 7,114,179 B1 to Ritter | X | X | Obviousness |
| US 8,602,293 B2 to Hammad | X | X | Obviousness |
| EP 2 076 889 to Dixon | X | X | Obviousness |
| US 7,953,032 to Liang | X | X | Obviousness |
| US 8,259,568 to Laudermilch | X | X | Obviousness |
| JP2006201997A to Masahiro | X | X | Obviousness |
| US2008/0071637 to Saarinen | X | X | Obviousness |
| US2003/0093695 to Dutta | X | X | Obviousness |
| US 7,315,944 to Dutta | X | X | Obviousness |

In particular, see the prior art listed below and as set forth in the attached **Charts 1-2**.

1. PCT Publication No. WO 2009/141614 A1, to Alexander Terrell ("Terrell"), published November 26, 2009.  (See invalidity chart in **Charts 1 and 2**)

2. Japanese Application No. JP2001266178A to Yukio Arimori ("Arimori"), published September 28, 2001 (See invalidity chart in **Chart 2**)

3. Japanese Application No. JP2006201997A to Hayashi Masahiro ("Masahiro"), published August 3, 2006 (See invalidity chart in **Chart 1**)

4. U.S. Pat. No. 7,114,179 B1 to Rudolf Ritter ("Ritter"), issued September 26, 2006 (See invalidity chart in **Chart 1**)

5. U.S. Pat. No. 7,315,944 to Dutta, et. al, ("Dutta"), issued January 1, 2008.  (See invalidity charts in **Charts 1 and 2**)

6. U.S. Pat. No. 8,602,293 B2 to Ayman Hammad ("Hammad"), published January 26, 2012 (See invalidity charts in **Chart 1**)

7. EP 2 076 889 to Phil Dixon ("Dixon"), published July 8, 2009 (See invalidity charts in **Chart 1**)

8. U.S. Pat. No. 7,953,032 to Jie Liang ("Liang"), issued May 31, 2011 (See invalidity charts in **Chart 1**)

9. U.S. Pat. No. 8,259,568 to Norm Laudermilch ("Laudermilch"), issued September 4, 2012 (See invalidity charts in **Chart 1**)

10. U.S. Publication No. 2003/0093695 to Santanu Dutta ("Dutta"), published May 15, 2003 (See invalidity charts in **Chart 1**)

11. U.S. Publication No. 2008/0071637 A1 to Petteri Saarinen et. al. ("Sarrinen"), published March 20, 2008.  (See invalidity charts in **Charts 1** and **2**)

Defendant reserves the right, to the extent permitted by the Court and the applicable statutes and rules, to assert that the asserted claims are invalid under 35 U.S.C. § 102(f) in the event Defendant obtains additional evidence that the named inventors of '567 and '764 patents did not invent (either alone or in conjunction with others) the subject matter claimed in the '567 and '764 patents. Should Defendant obtain such evidence, they will provide the name of the person(s) from whom, and the circumstances under which, the invention or any part of it was derived.

Defendant further intends to rely on admissions of the named inventors and Plaintiff concerning the prior art, including statements found in the '567 and '764 patents, its prosecution history, other related patents or patent applications, any deposition testimony, and the papers filed and any evidence submitted by Plaintiff in conjunction with this action. Finally, Defendant may rely on testimony from the named inventors listed on any of the above references.

## III.   PRELIMINARY INVALIDITY CHARTS PURSUANT TO STANDING ORDER (OGP) 4.4

Pursuant to Standing Order 4.4, and subject to Defendant's reservation of rights, the attached invalidity **Charts 1-2** identify where in each item of prior art each element of each asserted claim is found for the asserted claims of the '567 and '764 patents. To the extent any cited prior art reference is deemed not to anticipate a claim as noted in the attached charts for failing to teach or suggest one or more limitations of that claim, the limitation would nonetheless have been inherent in the reference and/or obvious to one of ordinary skill in the art at the time of the alleged invention(s), either alone or by the combination of the cited prior art references with any of the other listed references. Examples of certain combinations are outlined above. It should be understood that citations within each exhibit are exemplary, not exhaustive, and should not be construed as the sole evidentiary support in the reference.

Defendant's claim charts are subject to revision and amendment following discovery or the Court's construction of the claims at issue. To the extent that Defendant's contentions reflect

8

constructions of claim limitations consistent with or implicit in Plaintiff's infringement contentions, no inference is intended nor should any be drawn that Defendant's agree with Plaintiff's claim constructions. Defendant expressly reserves the right to contest such claim constructions. Defendant offers such contentions solely in the alternative to any position they may ultimately take as to claim construction and non-infringement issues.

## IV.   INVALIDITY FOR NON-COMPLIANCE WITH 35 U.S.C. § 112 PURSUANT TO STANDING ORDER (OGP) 4.4

Pursuant to Standing Order 4.4 and subject to Defendant's reservation of rights, Defendant includes below the grounds on which Defendant contends the asserted claims of the '567 and '764 patents are invalid based on indefiniteness under 35 U.S.C. § 112, ¶ 2, lack of written description under 35 U.S.C. § 112, ¶ 1, and/or lack of enablement under 35 U.S.C. § 112, ¶ 1. As noted above, Plaintiff has not yet provided a claim construction for any of the terms and phrases that Defendant anticipates will be in dispute. Defendant, therefore, cannot provide a complete list of their § 112 defenses because Defendant does not know whether Plaintiff will proffer a construction for certain terms and phrases broader than, or inconsistent with, the construction that would be supportable by the disclosure set forth in the specification.

Accordingly, Defendant reserves the right, to the extent permitted by the Court and the applicable statutes and rules, to supplement, amend, and/or modify these § 112 invalidity contentions as discovery progresses.

The non-exclusive and non-limiting list of claim terms presently identified by Masabi within the '567 patent and the '764 patent are as follows:

'567

- ticket payload – cl 1
- pass – cl 1

- validation visual object – cl 1
- behavioral anomalies – cl 2
- time stamp – cl
- the pass data – cl 4
- mismatch of a hash value – cl 5
- stored pass data – cl 6
- updated usage data cl 7
- set a status bit  - cl 15
- fraudulent activity bit is set – cl 15

'764

- visual validation – cl 1
- token – cl 1
- unique identifier – cl 1, 10
- ticket payload – cl 1
- pre-determined input event – cl 10
- validation display object – cl 1
- configured to be secure – cl 11

It should be understood that Bytemark has not provided sufficient infringement contentions from which their apparent interpretation of the claim terms could be inferred. Additionally, the present case has not progressed to the point that claim term definitions have been exchanged by either party. Therefore, Masabi reserves the right to amend, supplement, and correct the aforementioned list of indefinite terms as the information becomes available.

## V.    INVALIDITY FOR NONCOMPLIANCE UNDER 35 U.S.C. § 101

The Asserted Claims lack patentable subject matter under 35 U.S.C. § 101 for the same reasons articulated by the Eastern District of Texas in the Masabi litigation before Judge Gilstrap where the Parent Patents U.S. Patent Nos. 8,494,967 and 9,239,993 (the "Parent Patents") were found to be invalid. This was affirmed by the Federal Circuit.

Each of the Asserted Claims fail to satisfy the two-part analysis for statutory subject matter under 35 U.S.C. § 101 in light of at least the US Supreme Court decision in *Alice Corporation Ply. Ltd. v. CLS Bank International* in that: 1) the Asserted Claims are directed to an abstract idea and 2) the

Asserted Claims do not amount to significantly more than the abstract idea itself. (134 S. Ct. 2347 (2014)). Under part 1, the Asserted Claims are directed to an abstract idea including at least one of a fundamental economic practice, method of organizing human activity, an idea of itself, and a mathematical formula/relationship. Under part 2, the Asserted Claims applying and limiting of the abstract idea does not amount to significantly more than the abstract idea itself. Thus, the Asserted Claims, just like the claims of the Parent Patents, are not patentable subject matter under 35 U.S.C. § 101, thereby making the Asserted Claims invalid.

### A. The Child '764 Patent is Invalid Under § 101

The '764 Child Patent, i.e., a child of one of the Parent Patents, claims a method and system of validating a ticket by showing a ticket taker a human-readable visual object. This is an abstract idea that can and has been performed manually by a human being. The claims recite the use of a "remote display device" and a "central computing system." Instead of improving the functioning of these computer components, the claims reference the components in terms of their conventional functions, such as sending, receiving, storing, and verifying data. "[C]laims directed to the collection, storage, and recognition of data are directed to an abstract idea." *Smart Sys. Innovations, LLC v. Chicago Transit Auth.*, No. 2016-1233, 2017 WL 4654964, at *6 (Fed. Cir. Oct. 18, 2017). Even if the asserted claims improve the efficiency of the abstract idea of verifying tickets using computers, which they don't, this basic action is not enough to make said claims patent eligible. *Intellectual Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1370 (Fed. Cir. 2015) ("[M]erely adding computer functionality to increase the speed or efficiency of the process does not confer patent eligibility on an otherwise abstract idea.").

The second part of the § 101 inquiry does not save the '764 Child Patent from invalidity. Beyond the abstract idea of validating a ticket by showing a ticket taker a human-readable object, the claims

recite nothing that could be considered an "inventive concept." The remaining hardware and software features in the claims are conventional, as is the way the features operate and interact. The patent itself teaches that "[t]he software components may, generally, be implemented in hardware, if desired, using conventional techniques." See '764 Child Patent at 13:43- 46. The claims contain no "inventive concept" sufficient to confer patent eligibility on this otherwise abstract idea.

Bytemark may argue the following distinction between the '764 Child Patent claims and those of the Invalid Parent Patents: that the ticket contains code that destroys the ticket after it has been used. However, the '764 Child Patent claims are not materially different from those of the Invalid Parent Patents. The alleged difference "providing for the destruction of the ticket after it has been used" is a conventional step that has existed for hundreds of years in the form of ticket holders disposing of their physical paper tickets after they have been used at a venue. The '764 Child Patent specification even describes "the old system" of ticket verification as "looking at the paper ticket and tearing it in half." See '764 Child Patent at col. 1, ll. 40. Moving this routine step to a generic computer cannot save the '764 Child Patent. It is invalid under § 101.

## B. The Child '567 Patent is Invalid Under §101

The '567 Child Patent, i.e., a child of one of the Parent Patents, is directed to the abstract idea of a mobile device sending information to a server. The server then determines if there is "any mismatch" in the data it receives from the mobile device by comparing what it transmitted with what it received. If there is a mismatch, the '567 Child Patent requires that the server store a "data value indicating the fraudulent activity." Based on that data value, the server cancels the ticket.

The steps of the '567 Child Patent can be summarized as the abstract idea of detecting fraudulent activity in a ticketing system. The claimed steps of sending and receiving information, and comparing the sent and received information to determine whether a transaction is authentic, can all be performed

in a human mind or with a pen and paper. Moreover, as the examiner noted during the prosecution, making "a pass, credit card, file, or other such user data . . unavailable, expired, deleted, or cancelled upon discovery of fraudulent activity" is a well-known process that can be performed by humans. (See the '567 Office Action, Appl. No. 14/286,622 (Aug. 10, 2018)) at 8.

Similar claims were found abstract in *FairWarning IP, LLC v. Iatric Systems,* 839 F.3d 1089 (Fed. Cir. 2016) (finding the claims at issue were abstract where the patented method "collects information regarding accesses of a patient's personal health information, analyzes the information according to one of several rules … to determine if the activity indicates improper access, and provides notification if it determines that improper access has occurred."). In short, the claims of the '567 Child Patent fails part I of the § 101 analysis.

Regarding Part II of the analysis, there is no "inventive concept" that transforms the abstract idea into patent eligible subject matter. The additional elements in the claims of the '567 Child Patent (e.g., the "server computer sub-system," "device," and "network") do not amount to anything more than generic computer systems used to implement the abstract idea. For example, see *In re TLI Commc'ns LLC Patent Litig.,* 823 F.3d 607, 612 (Fed. Cir. 2016) (holding patent invalid where the claimed "server is described simply in terms of performing generic computer functions such as storing, receiving, and extracting data.").

While the '567 Child Patent was pending, the examiner rejected the claims three times under § 101. Each time the examiner maintained that the claims were directed to the abstract idea of determining fraudulent activity associated with a ticketing system. And each time, Bytemark responded with arguments paralleling those it made—and ultimately rejected by the court—in the E.D Texas Masabi litigation.

The examiner's reasoning in his first three § 101 rejections followed the reasoning applied in

13

the 2016 E.D. Texas Masabi litigation to invalidate the invalid Parent Patents. This makes sense because the '567 Child Patent shares substantial portions of its disclosure with the one of the invalid Parent Patents (the '993 patent). It was only after the third rejection that the examiner allowed the claims. But the examiner did not allow the claims because Bytemark convinced him the claims were eligible under § 101. Instead, the examiner allowed the claims based on "the newest Updated Guidance on subject matter eligibility." (See '567 Office Action, Appl. No. 14/286,622 (Feb. 13, 2019)).

On January 7, 2019, the Patent Office's Revised § 101 Guidance became effective. The new § 101 guidance made finding a patent invalid under § 101 much more difficult. The USPTO lowered the § 101 standards. But the USPTO guidance did not change the law. See *ChargePoint, Inc. v. SemaConnect, Inc.,* 920 F.3d 759, 771 (Fed. Cir. 2019) (deciding a patent ineligible under § 101 while making no reference to the new USPTO guidance and applying the two-step § 101 analysis dictated by the Supreme Court); *Cleveland Clinic Found. v. True Health Diagnostics LLC*, 760 F. App'x 1013, 1020 (Fed. Cir. 2019) ("While we greatly respect the PTO's expertise on all matters relating to patentability, including patent eligibility, we are not bound by its guidance."); *Cleveland Clinic II*, No. 117CV198LMBIDD, 2017 WL 3381976, at *7 (disregarding the guidelines because they have  not been through "formal adjudication or notice and comment rule making.").

Here, the asserted claims must still be scrutinized under the law set forth by the Supreme Court and the Federal Circuit. And under this law—the same law applied by the examiner in the first three rejections and the same law applied in the Texas Masabi invalidity decisions that were upheld by the Federal Circuit—the claims of the '567 are invalid.

Masabi reserves the right to supplement these positions in view of pleadings of the Plaintiff and claim construction findings that may be issued by the Court.

## VI.    INVALIDITY DUE TO INEQUITABLE CONDUCT

The Patents-in-Suit are invalid and unenforceable due to inequitable conduct.  Inequitable conduct is an equitable defense to patent infringement that bars enforcement of a patent and related family patents. To prevail on inequitable conduct, an accused infringer must show that an applicant (1) "failed to disclose material information . . . and (2) intended to deceive the U.S. Patent and Trademark Office." *Cargill, Inc. v. Canbra Foods, Ltd*., 476 F.3d 1359, 1363 (Fed. Cir. 2007). "[A]s a general matter, the materiality required to establish inequitable conduct is but-for materiality." *Therasense, Inc. v. Becton, Dickinson & Co.,* 649 F.3d 1276, 1291 (Fed. Cir. 2011) (en banc).

The Patents-in-Suit should not have been granted due to fraud that was committed by Bytemark before the USPTO. See, e.g., *Energy Heating, Ltd. Liab. Co. v. Heat On-The-Fly, Ltd. Liab. Co.*, 889 F.3d 1291, 1303 (Fed. Cir. 2018) (ruling patent unenforceable due to inequitable conduct); *GS CleanTech Corp. v. Adkins Energy LLC*, 951 F.3d 1310, 1332 (Fed. Cir. 2020) (same); *Intellect Wireless, Inc. v. HTC Corp.,* 732 F.3d 1339, 1346 (Fed. Cir. 2013) (same).

Before suing Masabi in this action, Bytemark also sued Masabi for patent infringement of the Parent Patents in a suit before Judge Gilstrap in the E.D. Texas. In the prior Masabi suit, Masabi served Bytemark with invalidity contentions and an invalidity motion detailing how the Parent Patents were invalid over the prior art, and invalid under § 101. This resulted in Judge Gilstrap invalidating the Parent Patents under § 101. In a PTAB proceeding, one of the Parent Patents was invalidated under § 102. Both invalidity rulings were affirmed by the Federal Circuit.

Here, the Patents-in-Suit are children to the Parent Patents. The Patents-in-Suit share the same disclosure, subject matter, and "remarkably similar" claims to the Parent Patents. Despite the remarkable similarity, Bytemark chose not to provide any of the prior litigation information noted here to the PTO *during prosecution* of the Patents-in-Suit. It was withheld deliberately so that the Examiner

would be unaware of the prior art and adverse § 101 rulings when deciding whether to allow the Patents-in-Suit. The reason for doing so is clear. The similarity in subject matter and claim language would have caused the Examiner not to allow the Patents-in-Suit. Subverting relevant information is a hallmark of inequitable conduct.

Bytemark may argue the PTO already had all of the withheld information such that Bytemark could not have had an intent to mislead the PTO. However, this would be false. In late 2016 Masabi provided invalidity contentions to Bytemark detailing how the Parent Patents were invalid over the prior art. On October 4, 2017 Masabi filed its motion with Judge Gilstrap seeking invalidity of the Parent Patents based on § 101. Bytemark intentionally failed to inform the PTO about the § 101 rulings from the E.D. of Texas during prosecution of the Patents-in-Suit. This conduct constitutes specific intent to deceive the PTO. As shown in the timeline below, the PTO was *not* informed of the § 101 rulings until February 19, 2020, more than 7 months *after* Patents-in-Suit had issued.

<u>Timeline Of Bytemark Withholding Material Information</u>



It was therefore impossible for the PTO to consider the § 101 invalidity ruling because the Patents-in-Suit were no longer pending at that time. This delay is inexcusable as Bytemark had the Magistrate Judge's invalidity recommendation by November 26, 2018 (Dkt#146) and the District Judge's adoption of that recommendation by February 7, 2019 (Dkt#150). Bytemark nevertheless withheld this information from the PTO for 7 months so that the Patents-in-Suit could issue without consideration of these very relevant § 101 decisions. This is precisely the kind of conduct that can form

the basis of an inequitable conduct invalidity claim. *See, e.g., Synqor, Inc. v. Cisco Sys.,* No. 2:11CV54, 2012 U.S. Dist. LEXIS 129463, at \*25-27 (E.D. Tex. Aug. 7, 2012) (holding there is a plausible inference that the examiner would not have allowed the claims if he had been aware of a reexamination decision); *Boehringer Ingelheim Vetmedica, Inc. v. Schering- Plough Corp.*, 68 F. Supp. 2d 508, 550-51 (D.N.J. 1999) (finding inequitable conduct where patentee withheld litigation materials even though it had disclosed the prior art).

Litigation materials—such as a § 101 invalidity ruling and related invalidity contentions—are material per se. *See* MPEP § 2001.06(c) (6th Ed. Rev. 2, July 1996) ("Where the subject matter for which a patent is being sought is or has been involved in litigation, the existence of such litigation and any other material information arising therefrom must be brought to the attention of the Patent and Trademark Office."); *see also Leviton Mfg. Co. v. Universal Sec. Instruments, Inc.,* 606 F.3d 1353, 1362 (Fed. Cir. 2010) (holding that related litigation involving parent patents is material and should be disclosed during prosecution."). Bytemark purposely withheld material information from the PTO examiner. This conduct is further a violation of 37 CFR §1.56 as Bytemark had a duty of disclosure and candor to the PTO. The inventors, Bytemark and Bytemark's attorneys specifically had a duty to disclose the withheld information. *See* 37 CFR §1.56(c).

The Patents-in-Suit are invalid due to, inter alia, inequitable conduct.

## VII. DOCUMENT PRODUCTION UNDER STANDING ORDER (OGP) 4.4

Pursuant to Standing Order 4.4, and subject to Defendant's reservation of rights, Defendant identifies documents produced as MASABI000001- MASABI001224. Said documents are being produced herewith. Moreover, additional prior art can be found in the file history for the '576 and '764 patents. Defendant reserves the right, to the extent permitted by the Court and the applicable statutes and rules, to rely on any such references, whether or not identified above, to establish, among other

things, the scope and content of the prior art. Also, as noted above, Defendant's search for prior art references, additional documentation, and/or corroborating evidence, including witness testimony concerning prior art systems, is ongoing. Accordingly, Defendant reserves the right, to the extent permitted by the Court and the applicable statutes and rules, to continue to supplement their production as Defendant obtains additional prior art references, documentation, testimony and/or corroborating evidence concerning invalidity during the course of discovery.

<strong>BROZYNSKI & DALTON PC</strong>

DATED:  March 7, 2024

By: /Katarzyna Brozynski /
Katarzyna Brozynski
Bar No. 24036277
5700 Tennyson Parkway, Suite 300
Plano, TX 75204
Tel: 972-371-0679
Email: kasia@bdlegalgroup.com

Douglas P. LaLone (*Pro Hac Vice Admitted*)
**FISHERBROYLES, LLP**
400 Renaissance Center, Suite 2600
Detroit, MI 48243
Telephone: 586.871.6302
E-mail: Douglas.lalone@fisherbroyles.com

*Attorneys for Defendant*
*Masabi Ltd.*

## **CERTIFICATE OF SERVICE**

This is to certify that all known counsel of record who are deemed to have consented to electronic service are being served with a copy of this document on this the 7th day of March 2024.


By:   Douglas LaLone