**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | | |
|---|---|---|
| BYTEMARK, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | Civil Action No. 6:22-cv-00304-ADA-DTG |
| | § | |
| MASABI LTD., | § | JURY TRIAL DEMANDED |
| | § | |
| Defendant. | § | |

**PLAINTIFF BYTEMARK, INC.'S RESPONSIVE CLAIM CONSTRUCTION BRIEF**

## <u>TABLE OF CONTENTS</u>

**Page**

I.    BACKGROUND..................................................................................................... 1

II.   CLAIM CONSTRUCTION LEGAL STANDARDS............................................ 2

    A.    Claim Construction..................................................................................... 2

    B.    Departing from the Ordinary Meaning of a Claim Term................................4

    C.    Indefiniteness..............................................................................................5

III.  TERMS DISPUTED BY MASABI...................................................................... 6

    A.    "pass"..........................................................................................................6

    B.    "behavioral anomalies/anomaly"..................................................................8

    C.    "time stamp"..............................................................................................10

    D.    "pass data".................................................................................................11

    E.    "mismatch of hash value"..........................................................................13

    F.    "updated usage data".................................................................................15

    G.    "fraudulent activity bit".............................................................................16

    H.    Masabi's claim terms/arguments not disclosed pursuant to OGP 4.4....................18

IV.   CONCLUSION...................................................................................................18

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286 (Fed. Cir. 2014)............................................................2

*Athletic Alts., Inc. v. Prince Mfg.*, 73 F.3d 1573 (Fed. Cir. 1996).....................................................3

*Alloc, Inc. v. Int'l Trade Comm'n*, 342 F.3d 1361 (Fed. Cir. 2003).....................................................3

*Azure Networks, LLC v. CSR PLC*, 771 F.3d 1336 (Fed. Cir. 2014)........................................ *passim*

*Baker Hughes Oilfield Operations, Inc. v. Prod. Tool Sol., Inc.*,
    No. 1-17-CV-291-LY, 2020 WL 1916691 (W.D. Tex. Apr. 17, 2020)........................................4

*Baldwin Graphic Sys., Inc. v. Siebert, Inc.*, 512 F.3d 1338 (Fed. Cir. 2008)............................16, 17

*ClearOne, Inc. v. Shure Acquisition Holdings, Inc.*, 35 F.4th 1345 (Fed. Cir. 2022).......................6

*Comark Commc'ns, Inc. v. Harris Corp.*, 156 F.3d 1182 (Fed. Cir. 1998)........................................2

*Constant v. Advanced Micro-Devices, Inc.*, 848 F.2d 1560 (Fed. Cir. 1988)....................................3

*Cordis Corp. v. Bos. Sci. Corp.*, 561 F.3d 1319 (Fed. Cir. 2009)......................................................5

*Cyboenergy, Inc. v. Altenergy Power Sys. U.S., Inc.*, No. 6:22-CV-01136-KC,
    2023 U.S. Dist. LEXIS 227791 (W.D. Tex. Dec. 20, 2023).........................................................3

*Dow Chem. Co. v. Nova Chems. Corp. (Can.)*, 809 F.3d 1223 (Fed. Cir. 2015).........................6, 18

*Eon Corp. IP Holdings v. Silver Spring Networks*, 815 F.3d 1314 (Fed. Cir. 2016).........................4

*GE Lighting Sols., LLC v. AgiLight, Inc.*, 750 F.3d 1304 (Fed. Cir. 2014).................................4, 5

*Golden Bridge Tech., Inc. v. Apple Inc.*, 758 F.3d 1362 (Fed. Cir. 2014)........................................4

*Hand Held Prod., Inc. v. Amazon.com, Inc.*, No. CV 12-768-RGA-MPT,
    2014 WL 2873902 (D. Del. June 24, 2014)................................................................................6

*Hill-Rom Servs., Inc. v. Stryker Corp.*, 755 F.3d 1367 (Fed. Cir. 2014)..........................................4

*Hughes Oilfield Operations, Inc. v. Prod. Tool Sol., Inc.*, No. 1-17-CV-291-LY,
    2020 WL 1916691 (W.D. Tex. Apr. 17, 2020)...........................................................................4

*In re Hiniker Co.*, 150 F.3d 1362 (Fed. Cir. 1998).........................................................................2

*Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111 (Fed. Cir. 2004).........2

*Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898 (Fed. Cir. 2004)....................................*passim*

*Micropairing Techs. LLC v. Toyota Motor Mfg. Texas Inc.*,
No. SA-21-CV-00940-XR, 2022 WL 62540 (W.D. Tex. Jan. 5, 2022).....................................4

*Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898 (2014)...............................................5, 6, 18

*O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351 (Fed. Cir. 2008)......................4

*Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005)..........................................................2, 3, 17

*Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243 (Fed. Cir. 1998)........................2, 5

*River States Truck & Trailer, Inc. v. Daimler Vans USA LLC*,
604 F. Supp. 3d 733 (W.D. Wis. 2022) .............................................................................8

*Sesaco Corp. v. Equinom Ltd.*, No. 1:20-CV-01053-LY,
2022 WL 17257244, (W.D. Tex. Nov. 28, 2022)................................................................6

*Swissdigital USA Co. v. Wenger S.A.*, No. 6:21-CV-00453-ADA-DTG,
2022 WL 3567348 (W.D. Tex. Aug. 18, 2022) ...............................................................7, 9

*Tech. Co. v. Publ'ns Int'l, Ltd.*, 844 F.3d 1370 (Fed. Cir. 2017)...........................................5

*Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313 (Fed. Cir. 2002)...............................2

*Thorner v. Sony Comput. Entm't Am. LLC*, 669 F.3d 1362 (Fed. Cir. 2012)..........................*passim*

*3M Innovative Props. Co. v. Tredegar Corp.*, 725 F.3d 1315 (Fed. Cir. 2013)..............................5

*U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554 (Fed. Cir. 1997)..................................4

*VDP Patent, LLC v. Welch Allyn Holdings, Inc.*, 623 F. Supp. 2d 414 (S.D.N.Y. 2008)..................6

*Williamson v. Citrix Online, LLC*, 792 F.3d 1339 (Fed. Cir. 2015)..................................2

*Woodrow Woods & Marine Exhaust Sys., Inc. v. Deangelo Marine Exhaust, Inc.*,
692 F.3d 1272 (Fed. Cir. 2012)...........................................................................9, 15

**Statutes**

35 U.S.C. § 112...............................................................................................................5

Plaintiff Bytemark, Inc. ("Plaintiff" or "Bytemark") files this Responsive Claim Construction Brief in response to Masabi Ltd. ("Defendant" or "Masabi")'s Opening Claim Construction Brief.  As set forth below, Bytemark respectfully requests that the claim terms identified by Masabi be construed as having their ordinary and customary meaning.

## I.    BACKGROUND

U.S. Patent No. 10,360,567 (the '567 Patent) issued on July 23, 2019, on an application filed on May 23, 2014.  Plaintiff has asserted claims 1–16 of the '567 Patent against Masabi.  U.S. Patent No. 10,346,764 (the '764 Patent) issued on July 9, 2019, on an application filed on August 11, 2015.  Plaintiff has asserted claims 3–8, 11–14, 24, and 25 of the '764 Patent against Masabi.

Pursuant to the Scheduling Order entered in this case (Dkt. No. 40), on March 12, 2024, Masabi identified seven claim terms for construction, relating only to the asserted claims of the '567 Patent, and on March 22, 2024, Masabi disclosed its proposed constructions for those terms. Masabi served its Opening Claim Construction Brief (Dkt. No. 41) on April 9, 2024.  In its brief— for the first time—Masabi introduces dozens of additional terms for construction, both proposing definitions and arguing that terms are indefinite.  As addressed in Plaintiff's Motion to Strike, which will be filed separately, Masabi's challenges that were not properly disclosed and are in violation of the Court's Standing Order Governing Proceedings (OGP) 4.4—Patent Cases ("OGP 4.4") are waived.  Masabi's brief also presents meritless arguments that Plaintiff's infringement contentions are "factually devoid."  Plaintiff's preliminary infringement contentions are in full compliance with the rules of this Court, and if Masabi had issues with these contentions, it should have raised them when the contentions were served in January.  Additionally, Masabi's arguments regarding a prior IPR, the validity of the patents, and the merits of its noninfringement arguments are false and not relevant to claim construction.  Nevertheless, the IPR relating to the '764 Patent

was not successful—Bytemark is accusing Masabi of infringement of 12 of those claims—and the PTAB refused to institute IPR of the petition relating to the '567 Patent.  As set forth below, Masabi has not presented any evidence to warrant departure from the plain and ordinary meaning of the claim terms at issue.  *Thorner v. Sony Comput. Entm't Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012) ("A patentee must act as a lexicographer or explicitly disavow the full scope of the claim.").

## II.   CLAIM CONSTRUCTION LEGAL STANDARDS

### A.   Claim Construction

"It is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude.'" *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc) (quoting *Innova/Pure Water Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004)).  "The claim construction inquiry . . . begins and ends in all cases with the actual words of the claim." *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1248 (Fed. Cir. 1998).  "[I]n all aspects of claim construction, 'the name of the game is the claim.'" *Apple Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1298 (Fed. Cir. 2014) (quoting *In re Hiniker Co.*, 150 F.3d 1362, 1369 (Fed. Cir. 1998)) *overruled on other grounds by Williamson v. Citrix Online, LLC*, 792 F.3d 1339 (Fed. Cir. 2015).  "[T]he context in which a term is used in the asserted claim can be highly instructive." *Phillips*, 415 F.3d at 1314.  The specification may also resolve ambiguous claim terms "where the ordinary and accustomed meaning of the words used in the claims lack sufficient clarity to permit the scope of the claim to be ascertained from the words alone." *Teleflex, Inc. v. Ficosa N. Am. Corp.,* 299 F.3d 1313, 1325 (Fed. Cir. 2002).  But "[a]lthough the specification may aid the court in interpreting the meaning of disputed claim language, particular embodiments and examples appearing in the specification will not generally be read into the claims." *Comark Commc'ns, Inc. v. Harris Corp.*, 156 F.3d 1182, 1187 (Fed. Cir.

1998) (quoting *Constant v. Advanced Micro-Devices, Inc.*, 848 F.2d 1560, 1571 (Fed. Cir. 1988));

*see also Phillips*, 415 F.3d at 1323. "[I]t is improper to read limitations from a preferred

embodiment described in the specification—even if it is the only embodiment—into the claims

absent a clear indication in the intrinsic record that the patentee intended the claims to be so

limited." *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 913 (Fed. Cir. 2004); *Cyboenergy,*

*Inc. v. Altenergy Power Sys. U.S., Inc.*, No. 6:22-CV-01136-KC, 2023 U.S. Dist. LEXIS 227791,

at *5, *16–20 (W.D. Tex. Dec. 20, 2023).

The prosecution history is another tool to supply the proper context for claim construction

because, like the specification, the prosecution history provides evidence of how the U.S. Patent

and Trademark Office ("PTO") and the inventor understood the patent. *Phillips*, 415 F.3d at 1317.

However, "because the prosecution history represents an ongoing negotiation between the PTO

and the applicant, rather than the final product of that negotiation, it often lacks the clarity of the

specification and thus is less useful for claim construction purposes." *Id.* at 1318; *see also Athletic*

*Alts., Inc. v. Prince Mfg.*, 73 F.3d 1573, 1580 (Fed. Cir. 1996) (ambiguous prosecution history

may be "unhelpful as an interpretive resource").

The general rule—subject to two exceptions discussed *infra*—is that each claim term is

construed according to its ordinary and accustomed meaning as understood by one of ordinary

skill in the art at the time of the invention in the context of the patent. *Phillips*, 415 F.3d at 1312–

13; *Alloc, Inc. v. Int'l Trade Comm'n*, 342 F.3d 1361, 1368 (Fed. Cir. 2003); *Azure Networks, LLC*

*v. CSR PLC*, 771 F.3d 1336, 1347 (Fed. Cir. 2014) ("There is a heavy presumption that claim terms

carry their accustomed meaning in the relevant community at the relevant time." (quotation marks

omitted)) *cert. granted, judgment vacated*, 575 U.S. 959 (2015). **No construction of a claim term**

**is necessary when a person of ordinary skill in the art could readily ascertain the meaning of**

**the term.**  *Hill-Rom Servs., Inc. v. Stryker Corp.*, 755 F.3d 1367, 1371 (Fed. Cir. 2014); *Hughes Oilfield Operations, Inc. v. Prod. Tool Sol., Inc.*, No. 1-17-CV-291-LY, 2020 WL 1916691, at *9 (W.D. Tex. Apr. 17, 2020).

"Claim construction is a matter of resolution of disputed meanings and technical scope, not an obligatory exercise in redundancy."  *U.S. Surgical Corp. v. Ethicon, Inc.,*  103 F.3d 1554, 1568 (Fed. Cir. 1997); *see also O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co*., 521 F.3d 1351, 1362 (Fed. Cir. 2008) ("[D]istrict courts are not (and should not be) required to construe *every* limitation present in a patent's asserted claims."); *Baker Hughes Oilfield Operations, Inc. v. Prod. Tool Sol., Inc.*, No. 1-17-CV-291-LY, 2020 WL 1916691, at *9 (W.D. Tex. Apr. 17, 2020) (holding that the defendant "ha[d] identified no dispute over claim scope that necessitates construction of the term").  At the claim construction stage, "courts should not resolve questions that do not go to claim scope, but instead go to infringement, or improper attorney argument." *Eon Corp. IP Holdings v. Silver Spring Networks*, 815 F.3d 1314, 1319 (Fed. Cir. 2016); *see also Micropairing Techs. LLC v. Toyota Motor Mfg. Texas Inc.*, No. SA-21-CV-00940-XR, 2022 WL 62540, at *14 (W.D. Tex. Jan. 5, 2022).

### B.      Departing from the Ordinary Meaning of a Claim Term

There are "only two exceptions to [the] general rule" that claim terms are construed according to their plain and ordinary meaning: "1) when a patentee sets out a definition and acts as his own lexicographer, or 2) when the patentee disavows the full scope of the claim term either in the specification or during prosecution."  *Golden Bridge Tech., Inc. v. Apple Inc.*, 758 F.3d 1362, 1365 (Fed. Cir. 2014) (quoting *Thorner*, 669 F.3d at 1365); *see also GE Lighting Sols., LLC v. AgiLight, Inc.*, 750 F.3d 1304, 1309 (Fed. Cir. 2014) ("[T]he specification and prosecution history only compel departure from the plain meaning in two instances: lexicography and

disavowal.").  The standards for finding lexicography or disavowal are "exacting."  *GE Lighting Sols.*, 750 F.3d at 1309.

To act as his own lexicographer, the patentee must "clearly set forth a definition of the disputed claim term" and "clearly express an intent to define the term."  *Id.* (quoting *Thorner*, 669 F.3d at 1365); *see also Renishaw*, 158 F.3d at 1249.  The patentee's lexicography must appear "with reasonable clarity, deliberateness, and precision."  *Renishaw*, 158 F.3d at 1249.

To disavow or disclaim the full scope of a claim term, the patentee's statements in the specification or prosecution history must amount to a "clear and unmistakable" surrender.  *Cordis Corp. v. Bos. Sci. Corp.*, 561 F.3d 1319, 1329 (Fed. Cir. 2009); *see also Thorner*, 669 F.3d at 1366 ("The patentee may demonstrate intent to deviate from the ordinary and accustomed meaning of a claim term by including in the specification expressions of manifest exclusion or restriction, representing a clear disavowal of claim scope.").  "Where an applicant's statements are amenable to multiple reasonable interpretations, they cannot be deemed clear and unmistakable."  *3M Innovative Props. Co. v. Tredegar Corp.*, 725 F.3d 1315, 1326 (Fed. Cir. 2013).

### C.     Indefiniteness

Patent claims must particularly point out and distinctly claim the subject matter regarded as the invention.  35 U.S.C. § 112, ¶ 2.  "[A] patent is invalid for indefiniteness if its claims, read in light of the specification delineating the patent, and the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention."  *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 901 (2014).  Whether a claim is indefinite is determined from the perspective of one of ordinary skill in the art as of the time the application for the patent was filed.  *Id.* at 911.  "Indefiniteness must be proven by clear and convincing evidence."  *Tech. Co. v. Publ'ns Int'l, Ltd.*, 844 F.3d 1370, 1377 (Fed. Cir. 2017).  "The burden of proving

indefiniteness . . . remains at all times on the party challenging the validity of the patent." *Dow Chem. Co. v. Nova Chem. Corp. (Can.)*, 809 F.3d 1223, 1227 (Fed. Cir. 2015).

Extrinsic evidence may play a significant role in the indefiniteness analysis, as definiteness is evaluated from the perspective of a person of skill and requires a determination of whether such a skilled person would understand the scope of the claim when it is read in light of the specification. *Nautilus*, 572 U.S. at 898; *Dow Chem.*, 809 F.3d at 1225; *Hand Held Prod., Inc. v. Amazon.com, Inc.*, No. CV 12-768-RGA-MPT, 2014 WL 2873902, at *5, *16, *27 (D. Del. June 24, 2014) (pointing to Amazon's lack of expert testimony in ultimately rejecting its indefiniteness arguments); *VDP Patent, LLC v. Welch Allyn Holdings, Inc.*, 623 F. Supp. 2d 414, 423 (S.D.N.Y. 2008) (stating that extrinsic evidence may be necessary to invalidate a claim as indefinite). "Just because a term is susceptible to more than one meaning does not render it indefinite." *ClearOne, Inc. v. Shure Acquisition Holdings, Inc.*, 35 F.4th 1345, 1351 (Fed. Cir. 2022); *see also Sesaco Corp. v. Equinom Ltd.,* 2022 WL 17257244, at *4 (W.D. Tex. Nov. 28, 2022).

## III.     TERMS DISPUTED BY MASABI

### A.     "pass"

| Claim Term, Clause, or Phrase | U.S. Pat. No. 10,360,567 Claims | Plaintiff's Proposal | Defendant's Proposal |
|---|---|---|---|
| "pass" | 1, 3, 4, 6–11,13–16 | No construction necessary; plain and ordinary meaning | "Computer code generated from a server, that creates a visual display object the customer sees on the phone." |

Plaintiff asserts that no construction of "pass" is necessary and one of ordinary skill in the art would understand the ordinary and customary meaning of this term at the time of the invention when read in the context of the claims, specification, and prosecution history of the '567 Patent.

6

The two exceptions to the general rule that claims are construed according to their plain and ordinary meaning—when a patentee sets out a definition and acts as his own lexicographer or when a patentee disavows the full scope of the claim term—are not present here.  *See Thorner*, 669 F.3d at 1365 (stating that the "only two exceptions to [the] general rule" that claim terms are construed according to their plain and ordinary meaning are when the patentee (1) acts as his/her own lexicographer or (2) disavows the full scope of the claim term either in the specification or during prosecution); *Swissdigital USA Co. v. Wenger S.A.*, No. 6:21-CV-00453-ADA-DTG, 2022 WL 3567348, at *2 (W.D. Tex. Aug. 18, 2022).  The prosecution history identified by Masabi does not address the scope of the term "pass" or otherwise define it.  Furthermore, the relationship between the terms "pass" and "code" in the prosecution history identified by Masabi does not support its proposed construction.  If anything, the language appears to refer to some code *that makes the pass no longer available* (". . . and the code in the ticket payload which makes the pass . . . no longer available . . .") rather than code relating to the pass itself or code that creates a visual validation object.  Masabi has not established that the patentee engaged in lexicography or disavowed the full scope of the term "pass," and construction is therefore not appropriate.

Even if construction of this term were appropriate, Masabi's construction is unavailing because it improperly imports limitations from the specification and elsewhere.[1]  *See Liebel-Flarsheim Co.*, 358 F.3d at 913 ("[I]t is improper to read limitations from a preferred embodiment described in the specification—even if it is the only embodiment—into the claims absent a clear indication in the intrinsic record that the patentee intended the claims to be so limited.").  Masabi's attempt to add limitations (e.g., requiring the pass be computer code from a server, requiring that

---

[1] Masabi's proposed construction also adds language not used in the claims of the '567 Patent, including "phone."

that code create a visual validation object, etc.) is not supported by the intrinsic record. Additionally, Masabi's dictionary definition of a term *from its own construction* ("computer code") is irrelevant to the definition of the claim term "pass" and should be rejected.[2]

Masabi's attempt to deviate from the ordinary and customary meaning of this claim term falls short of the presumption laid out by the Federal Circuit.  *See Azure Networks*, 771 F.3d at 1347 ("There is a heavy presumption that claim terms carry their accustomed meaning in the relevant community at the relevant time.").  Accordingly, no construction is necessary and the ordinary and customary meaning of this claim term should be applied.

**B.      "behavioral anomalies/anomaly"**

| Claim Term, Clause, or Phrase | U.S. Pat. No. 10,360,567 Claims | Plaintiff's Proposal | Defendant's Proposal |
|---|---|---|---|
| "behavioral anomalies/anomaly" | 2, 3 | No construction necessary; plain and ordinary meaning | "Server detection of usage of mobile ticketing and passes that do not match up with a consumer's typical usage habits of travel patterns, mismatched data or multiple failed attempts." |

Plaintiff asserts that no construction of "behavioral anomalies/anomaly" is necessary and one of ordinary skill in the art would understand the ordinary and customary meaning of this term at the time of the invention when read in the context of the claims, specification, and prosecution

---

[2] Masabi cites to "lawinsider.com" throughout its brief.  This dictionary purports to be "a subscription based contract database and resource center that helps over 300,000 lawyers and business owners draft and negotiate contracts more effectively."  *River States Truck & Trailer, Inc. v. Daimler Vans USA LLC*, 604 F. Supp. 3d 733, 741–42 (W.D. Wis. 2022).  Masabi does not explain the relevance of definitions provided by a website that appears to have no relation to the subject matter of the asserted patents.  *See id.* (rejecting a definition from lawinsider.com and stating that the website had no relation to the motor vehicle industry).

history of the '567 Patent.  The two exceptions to the general rule that claims are construed according to their plain and ordinary meaning—when a patentee sets out a definition and acts as his own lexicographer or when a patentee disavows the full scope of the claim term—are not present here.  *See Thorner*, 669 F.3d at 1365 (describing lexicography and disavowal as the only exceptions to the general rule); *Swissdigital USA Co.,* 2022 WL 3567348, at *2.  Defendant does not argue that the patentee acted as his own lexicographer or disavowed the full scope of the term "behavioral anomalies/anomaly."  Defendant only points to specific embodiments where the Plaintiff describes ***a focus*** of a different term (behavioral detection): "*Behavioral Detection* is focused on . . ."; and identifies ***an example*** of a behavior anomaly: "Other behavioral anomaly can be used.  For example, of the same pass data is being used for multiple attempts to activate the same pass from different devices."  Dkt No. 41 ("OB") at 7 (emphasis added).  Neither of these examples rise to lexicography or disclaimer, and attempting to limit the scope of this term to a specific embodiment is inappropriate.  *Woodrow Woods & Marine Exhaust Sys., Inc. v. Deangelo Marine Exhaust, Inc*., 692 F.3d 1272, 1283 (Fed. Cir. 2012) ("[C]laims should not be confined to the disclosed embodiments.").  Additionally, Defendant's argument that there is "no plain and ordinary meaning and is in essence a generalized term devoid of any specificity outside of what is disclosed in the '567 Patent specification" is conclusory attorney argument without any support from a POSITA and should be rejected.  OB at 7.  Accordingly, construction is not warranted.

Even if construction of this term were appropriate, Masabi's construction is untenable because it injects several new limitations into the claim without any support.  *See Liebel-Flarsheim Co.*, 358 F.3d at 913 ("[I]t is improper to read limitations from a preferred embodiment described in the specification—even if it is the only embodiment—into the claims absent a clear indication in the intrinsic record that the patentee intended the claims to be so limited.").  For example,

Defendant's proposed construction adds a requirement that there is server detection of both "mobile ticketing" and "passes" despite the term "mobile ticketing" not appearing anywhere in the claim. Defendant's proposed construction also limits the scope of this claim term to "typical usage habits of travel patterns, mismatched data, or multiple failed attempts" without any support.

Masabi's attempt to deviate from the ordinary and customary meaning of this claim term falls short of the presumption laid out by the Federal Circuit. *See Azure Networks*, 771 F.3d at 1347 ("There is a heavy presumption that claim terms carry their accustomed meaning in the relevant community at the relevant time."). Accordingly, no construction is necessary, and the ordinary and customary meaning of this claim term should be applied.

### C.    "time stamp"

| Claim Term, Clause, or Phrase | U.S. Pat. No. 10,360,567 Claim | Plaintiff's Proposal | Defendant's Proposal |
|---|---|---|---|
| "time stamp" | 6 | No construction necessary; plain and ordinary meaning | "A numerical representation of the date and time of when a file was first created and the date and time of any modifications to the file." |

Plaintiff asserts that no construction of "time stamp" is necessary and one of ordinary skill in the art would understand the ordinary and customary meaning of this term at the time of the invention when read in the context of the claims, specification, and prosecution history of the '567 Patent.

The two exceptions to the general rule that claims are construed according to their plain and ordinary meaning—when a patentee sets out a definition and acts as his own lexicographer or when a patentee disavows the full scope of the claim term—are not present here. *See Thorner*, 669 F.3d at 1365. Defendant concedes that the '567 patent specification "makes no attempt to

define or limit the term 'time stamp'" and does not cite to any prosecution history to argue lexicography or disclaimer. Accordingly, Defendant has not established that an exception to the general rule applies. Moreover, Defendant's assertion that the USPTO noted that time stamps "were old and **well-known** to persons skilled in the art at the time of the invention is made" supports Plaintiff's position that no construction is necessary. OB at 8 (emphasis added). Accordingly, construction is not warranted.

Even if construction of this term were appropriate, Masabi's construction is unavailing because it improperly adds limitations without support. *See Liebel-Flarsheim Co.*, 358 F.3d at 913. For example, Defendant's proposed construction adds a requirement of a "numerical representation of the date and time" and a "file" despite no support. Additionally, Masabi relies on an irrelevant dictionary definition (which appears to relate to an undefined "Trading System" and "Order") that does not resemble its proposed construction. OB at 8.

Masabi's attempt to deviate from the ordinary and customary meaning of this claim term falls short of the presumption laid out by the Federal Circuit. *See Azure Networks*, 771 F.3d at 1347 ("There is a heavy presumption that claim terms carry their accustomed meaning in the relevant community at the relevant time."). Accordingly, no construction is necessary, and the ordinary and customary meaning of this claim term should be applied.

D.     **"pass data"**

| Claim Term, Clause, or Phrase | U.S. Pat. No. 10,360,567 Claims | Plaintiff's Proposal | Defendant's Proposal |
|---|---|---|---|
| "pass data" | 4, 6–8 and 16 | No construction necessary; plain and ordinary meaning | "A numerical data value assigned by the server and utilized by the pass code to generate the visual validation object." |

Plaintiff asserts that no construction of "pass data" is necessary and one of ordinary skill in the art would understand the ordinary and customary meaning of this term at the time of the invention when read in the context of the claims, specification, and prosecution history of the '567 Patent.  The two exceptions to the general rule that claims are construed according to their plain and ordinary meaning—when a patentee sets out a definition and acts as his own lexicographer or when a patentee disavows the full scope of the claim term—are not present here.  *See Thorner*, 669 F.3d at 1365.  The portion of the specification cited by Masabi ("data integrity checking is to be sure that the pass data and the software managing that pass data on the user's device has not been altered improperly") does not define the term "pass data" such that lexicography is present or narrow the scope sufficient to evidence disavowal.  Similarly, the prosecution history identified by Masabi ("one of ordinary skill in the art would have recognized that applying the known technique of disable the pass functionality by erasing the pass data stored on the device would have yielded predictable results and resulted in an improved system") was a statement made by the examiner—not by the patentee—and clearly does not demonstrate that the patentee "clear[ly] and unmistakabl[y] surrender[ed]" the full scope of the claim term.  In sum, neither exception to the general rule that claims are construed according to their plain and ordinary meaning is present, and construction of this term is not warranted.

Even if construction of this term were appropriate, Masabi's proposed construction is untenable because it injects several new limitations into the claim without any support.  *See Liebel-Flarsheim, Inc.*, 358 F.3d at 913.  For example, the additional verbiage "numerical data value" or "pass code" do not appear anywhere in the claim, and there is no support for narrowing the scope of the claims in this manner.

Additionally, it is unclear how Defendant's statement that the patent claims "clearly differentiate the 'pass' from the 'pass data'" is relevant to its proposed construction.  The patent already uses different claim terms.  This statement is also inconsistent with Defendant's later assertion that "pass data" is "reasonably construed" as the *identical* construction Defendant provided for "pass."  *Compare* OB at 9 ("the term 'pass data' is reasonably construed as the **computer code generated from a server, that creates a visual display object the customer sees on the phone**") (emphasis added), *with* OB at 5 ([defendant's proposed construction of pass] "**computer code generated from a server, that creates a visual display object the customer sees on the phone**.") (emphasis added).

Masabi's attempt to deviate from the ordinary and customary meaning of this claim term falls short of the presumption laid out by the Federal Circuit.  *See Azure Networks*, 771 F.3d at 1347 ("There is a heavy presumption that claim terms carry their accustomed meaning in the relevant community at the relevant time.").  Accordingly, no construction is necessary, and the ordinary and customary meaning of this claim term should be applied.

### E.     "mismatch of a hash value"

| Claim Term, Clause, or Phrase | U.S. Pat. No. 10,360,567 Claim | Plaintiff's Proposal | Defendant's Proposal |
|---|---|---|---|
| "mismatch of a hash value" | 5 | No construction necessary; plain and ordinary meaning | "A unique numerical value created by the server that identifies the contents of the file that is stored on the mobile device.  A mismatch is when the hash value stored on the mobile device is not identical to the hash value stored on the server." |

Plaintiff asserts that no construction of "mismatch of a hash value" is necessary and one of ordinary skill in the art would understand the ordinary and customary meaning of this term at the time of the invention when read in the context of the claims, specification, and prosecution history of the '567 Patent.  The two exceptions to the general rule that claims are construed according to their plain and ordinary meaning—when a patentee sets out a definition and acts as his own lexicographer or when a patentee disavows the full scope of the claim term—are not present here. *Thorner*, 669 F.3d at 1365.  Masabi concedes there is no lexicography present: "the '567 patent specification nor the '567 prosecution history make[] any attempt to define the term 'hash value.'" OB at 10.  Masabi also does argue that the patentee disavowed the full scope of the claim term. Accordingly, no construction is necessary.

Even if construction of this term were appropriate, Masabi's construction is unavailing because it injects unreasonable limitations not found in the claims.  *See Liebel-Flarsheim Co.*, 358 F.3d at 913.  For example, Defendant's proposed construction adds a requirement of a "file that is stored on the mobile device" and a requirement that the hash value be "a unique numerical value created by the server."  Additionally, Masabi relies on an irrelevant dictionary definition that does not resemble its proposed construction.  Further, Masabi provides no support for its assertion that its proposed construction is "well understood...in the computing world."  OB at 10.

Masabi's attempt to deviate from the ordinary and customary meaning of this claim term falls short of the presumption laid out by the Federal Circuit.  *See Azure Networks*, 771 F.3d at 1347 ("There is a heavy presumption that claim terms carry their accustomed meaning in the relevant community at the relevant time.").  Accordingly, no construction is necessary, and the ordinary and customary meaning of this claim term should be applied.

### F.   "updated usage data"

| Claim Term, Clause, or Phrase | U.S. Pat. No. 10,360,567 Claim | Plaintiff's Proposal | Defendant's Proposal |
|---|---|---|---|
| "updated usage data" | 7 | No construction necessary; plain and ordinary meaning | "Information regarding the last activation of visual validation of a particular ticket." |

Plaintiff asserts that no construction of "updated usage data" is necessary and one of ordinary skill in the art would understand the ordinary and customary meaning of this term at the time of the invention when read in the context of the claims, specification, and prosecution history of the '567 Patent. The two exceptions to the general rule that claims are construed according to their plain and ordinary meaning—when a patentee sets out a definition and acts as his own lexicographer or when a patentee disavows the full scope of the claim term—are not present here. *See Thorner*, 669 F.3d at 1365. Defendant concedes that this term "is not found within the specification of the '567 Patent" and does not cite to any prosecution history to argue lexicography or disclaimer. OB at 11. To the extent Defendant identifies the term "usage" in the '567 specification or argues that all references to that term relate to activation of the visual validation object, it is improper to import limitations from embodiments of the specification. *See Woodrow Woods & Marine Exhaust Sys., Inc.*, 692 F.3d at 1283. Moreover, references to the term "usage" in isolation cannot support Defendant's position with respect to the broader term "updated usage data."

Masabi's proposed construction also impermissibly adds limitations into this claim term by replacing "data" with "information" and requiring this information to relate to the *last activation* of visual validation of a *particular ticket*. Defendant does not support why this limiting claim language should be included in this claim.

Masabi's attempt to deviate from the ordinary and customary meaning of this claim term falls short of the presumption laid out by the Federal Circuit. *See Azure Networks*, 771 F.3d at 1347 ("There is a heavy presumption that claim terms carry their accustomed meaning in the relevant community at the relevant time."). Accordingly, no construction is necessary, and the ordinary and customary meaning of this claim term should be applied.

### G.    "fraudulent activity bit"

| Claim Term, Clause, or Phrase | U.S. Pat. No. 10,360,567 Claim | Plaintiff's Proposal | Defendant's Proposal |
|---|---|---|---|
| "fraudulent activity bit" | 15 | No construction necessary; plain and ordinary meaning | "A single binary digit, set by one of two conditional states, indicating the presence or lack of fraud." |

Plaintiff asserts that no construction of "fraudulent activity bit" is necessary and one of ordinary skill in the art would understand the ordinary and customary meaning of this term at the time of the invention when read in the context of the claims, specification, and prosecution history of the '567 Patent. The two exceptions to the general rule that claims are construed according to their plain and ordinary meaning—when a patentee sets out a definition and acts as his own lexicographer or when a patentee disavows the full scope of the claim term—are not present here. *See Thorner*, 669 F.3d at 1365. Defendant concedes that "the '567 specification makes no attempt to define 'fraudulent activity bit'" and does not cite to any prosecution history to argue lexicography or disclaimer. OB at 13.

Defendant's assertion that the isolated terms "bit" or "status bit" are "consistently utilize[d] in a singular and not plural format" is incorrect. The Federal Circuit "has repeatedly emphasized that an indefinite article 'a' or 'an' in patent parlance carries the meaning of 'one or more' in open-ended claims containing the transitional phrase 'comprising.'" *Baldwin Graphic Sys., Inc. v.*

16

*Siebert, Inc.*, 512 F.3d 1338, 1342 (Fed. Cir. 2008).  The exceptions to this rule are extremely limited; a patentee must "evince[ ] a clear intent" to limit "a" or "an" to "one."  *Id.*  All references in the specification to "bit" or "a status bit" are preceded by the indefinite article "a," meaning "one or more" in patent parlance.  Dkt. No. 41-1 at Col. 14 Ln. 7 ("**a** status bit"); Col. 14 Lns. 12-13 ("**a** status bit"); Col. 14 Lns. 16-17 ("**these** bits"); claim 15 ("**a** status bit...") (emphases added).  Accordingly, Masabi's attempt to narrow the scope of "bit" to a "single binary digit" is inappropriate.

Further, Masabi again relies on a dictionary definition from lawsinsider.com of the term "bit"—in isolation—to support its proposed construction.  OB at 13.  The Federal Circuit has cautioned against placing undue reliance on the extrinsic record, noting extrinsic evidence is "unlikely to result in a reliable interpretation of patent claim scope unless considered in the context of the intrinsic evidence."  *Phillips*, 415 F.3d at 1319.  Moreover, even if, *arguendo*, Masabi's dictionary definition of "bit" were correct in isolation, because the '567 Patent's use of the indefinite article "a" carries the meaning of "one or more," Defendant's proposed construction of "*single* binary digit" is too narrow and inappropriate.  Additionally, Masabi's addition of verbiage relating to "conditional states" is unsupported and also inappropriate.  Masabi does not point to any intrinsic or extrinsic evidence to support adding this limitation.

Masabi's attempt to deviate from the ordinary and customary meaning of this claim term falls short of the presumption laid out by the Federal Circuit.  *See Azure Networks*, 771 F.3d at 1347 ("There is a heavy presumption that claim terms carry their accustomed meaning in the relevant community at the relevant time.").  Accordingly, no construction is necessary, and the ordinary and customary meaning of this claim term should be applied.

**H.      Masabi's claim terms/arguments not disclosed pursuant to OGP 4.4**

In addition to the seven claim terms addressed in this brief, Masabi—for the first time—proffers dozens of proposed constructions and assertions of indefiniteness that were not previously disclosed.  Masabi's failure to comply with OGP 4.4 is addressed in Plaintiff's Motion to Strike, which will be filed separately.

In addition to waiving these arguments, Masabi provides no substantive argument or evidence supporting departure from the plain and ordinary meaning and fails to meet its burden of proving indefiniteness for any of these terms.  *Dow Chem. Co.*, 809 F.3d at 1227 ("The burden of proving indefiniteness . . . remains at all times on the party challenging the validity of the patent."); *Nautilus, Inc.*, 572 U.S. at 901 ("Indefiniteness must be proven by clear and convincing evidence.").  Accordingly, the plain and ordinary meaning of all these terms should be maintained.

**IV.      CONCLUSION**

For all of the reasons given above, Plaintiff respectfully requests that all of the terms identified by Masabi be given their ordinary and customary meanings.

Dated: April 29, 2024

Respectfully submitted,

*/s/ Andy Tindel*

Andy Tindel
Texas Bar No. 20054500
MANN | TINDEL | THOMPSON
112 E. Line Street, Suite 304
Tyler, Texas 75702
Telephone: (903) 596-0900
Facsimile: (903) 596-0909
atindel@andytindel.com

18

Dariush Keyhani (*pro hac vice*)
Lead Attorney
District of Columbia Bar No. 1031500
Frances H. Stephenson (*pro hac vice*)
New York registration No. 5206495
Keyhani LLC
1050 30th Street NW
Washington, DC 20007
T. 202.748.8950
F. 202.318.8958
dkeyhani@keyhanillc.com
fstephenson@keyhanillc.com

**ATTORNEYS FOR PLAINTIFF**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 29, 2024, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF System, which will send a notification via electronic mail to all counsel of record.

*/s/ Andy Tindel*_____

Andy Tindel
